

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**SAFA ALIDOUST**                                                      Plaintiff

**VERSUS**                          CIVIL ACTION NO.: 1:17cv35 LG-RHW

**HANCOCK COUNTY MISSISSIPPI,**
**HANCOCK COUNTY MISSISSIPPI SHERIFF'S DEPARTMENT,**
**RICKY ADAM INDIVIDUALLY AND AS SHERIFF OF HANCOCK COUNTY**
**MISSISSIPPI,**
**DEPUTY CARL CONTRANCHIS INDIVIDUALLY AND AS DEPUTY SHERIFF OF**
**HANCOCK COUNTY MISSISSIPPI,**
**DEPUTY JOHN COMPTON INDIVIDUALLY AND AS DEPUTY SHERIFF OF**
**HANCOCK COUNTY MISSISSIPPI,**
**INVESTIGATOR STEVE SAUCIER INDIVIDUALLY AND INVESTIGATOR AT**
**HANCOCK COUNTY MISSISSIPPI SHERIFF'S DEPARTMENT,**
**CHIEF DEPUTY DON BASS INDIVIDUALLY AND AS CHIEF DEPUTY SHERIFF OF**
**HANCOCK COUNTY MISSISSIPPI,**
**CORRECTIONS OFFICER RONALD THOMPSON INDIVIDUALLY AND AS**
**CORRECTIONS OFFICER AT HANCOCK COUNTY ADULT DETENTION CENTER,**
**WARDEN BRANDON ZERINGUE, INDIVIDUALLY AND AS WARDER OF**
**HANCOCK COUNTY ADULT DETENTION CENTER,**
**DR. JOHN MONTGOMERY,**
**DR. WAYNE E. GRAYSON,**
**HEALTH ASSURANCE, LLC,**
**CITY OF BAY ST. LOUIS MISSISSIPPI,**
**BAY ST. LOUIS MISSISSIPPI POLICE DEPARTMENT,**
**OFFICER BRAD EPPERSON INDIVIDUALLY AND AS AN OFFICER OF BAY ST.**
**LOUIS POLICE DEPARTMENT,**
**CHIEF DARREN FREEMAN SUBSTITUTED FOR MIKE DENARDO AS POLICE**
**CHIEF OF BAY ST. LOUIS MISSISSIPPI POLICE DEPARTMENT,**
**and DEFENDANTS JOHN DOES 1-10**                         **Defendants**

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

## JURY TRIAL REQUESTED

COME NOW Plaintiff, **SAFA ALIDOUST** through undersigned counsel, and file this

Complaint against the Defendants, **HANCOCK COUNTY MISSISSIPPI, HANCOCK**

COUNTY MISSISSIPPI SHERIFF'S DEPARTMENT, RICKY ADAM INDIVIDUALLY

AND IN HIS CAPACITY AS SHERIFF OF HANCOCK COUNTY MISSISSIPPI,

DEPUTY CARL CONTRANCHIS INDIVIDUALLY AND IN HIS CAPACITY AS

DEPUTY SHERIFF OF HANCOCK COUNTY MISSISSIPPI, DEPUTY JOHN

COMPTON INDIVIDUALLY AND IN HIS CAPACITY AS DEPUTY SHERIFF OF

HANCOCK COUNTY MISSISSIPPI, INVESTIGATOR STEVE SAUCIER

INDIVIDUALLY AND IN HIS CAPACITY AS INVESTIGATOR AT HANCOCK

COUNTY MISSISSIPPI SHERIFF'S DEPARTMENT, CHIEF DEPUTY DON BASS

INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF DEPUTY SHERIFF OF

HANCOCK COUNTY MISSISSIPPI, CORRECTIONS OFFICER RONALD

THOMPSON INDIVIDUALLY AND IN HIS CAPACITY AS CORRECTIONS OFFICER

AT HANCOCK COUNTY ADULT DETENTION CENTER, WARDEN BRANDON

ZERINGUE, INDIVIDUALLY AND IN HIS CPAPCITY AS WARDER OF HANCOCK

COUNTY ADULT DETENTION CENTER, DR. JOHN MONTGOMERY, DR. WAYNE

E. GRAYSON, HEALTH ASSURANCE, LLC, CITY OF BAY ST. LOUIS MISSISSIPPI,

BAY ST. LOUIS MISSISSIPPI POLICE DEPARTMENT, OFFICER BRAD EPPERSON

INDIVIDUALLY AND IN HIS CAPACITY AS AN OFFICER OF BAY ST. LOUIS

POLICE DEPARTMENT, CHIEF DARREN FREEMAN SUBSTITUTED FOR MIKE

DENARDO AS POLICE CHIEF OF BAY ST. LOUIS MISSISSIPPI POLICE

DEPARTMENT, and DEFENDANTS JOHN DOES 1-10 and other as yet unidentified

defendants (hereinafter collectively referred to as "Defendants"), and in support thereof would

show unto this Honorable Court the following:

**PARTIES**

1) The Plaintiff, Safa Alidoust, is a citizen of Iran, and at the time of the incidents made the basis of this complaint was a legal resident of the State of Louisiana.

2) Defendant Hancock County Mississippi is a political subdivision of the State of Mississippi and may be served with process by effecting same upon the Board of Supervisors President, Blaine Lafontaine, and/or the Chancery Clerk for Hancock County Mississippi, Mr. Tim Kellar at the Hancock County Courthouse located at 152 Main Street, Bay St. Louis, Mississippi 39520.

3) Defendant Hancock County Sheriff's Department is a political entity, agency, and/or political subdivision of Hancock County Mississippi which may be served with process upon Sheriff Ricky Adam, or his designee or successor, at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520.

4) Defendant Sheriff Ricky Adam, as Sheriff of Hancock County Mississippi, in his individual and official capacity, is an adult resident citizen of Hancock County Mississippi and at all times herein the duly elected Sheriff of Hancock County Mississippi who may be served with process personally, or through his duly authorized designee or successor, at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520.

5) Defendant Deputy Carl Contranchis of the Hancock County Mississippi Sheriff's Department in his individual and official capacity, is an adult resident citizen of Hancock County Mississippi who may be served with process personally at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520 or wherever he may be found.

6) Defendant Deputy John Compton of the Hancock County Mississippi Sheriff's

Department in his individual and official capacity, is an adult resident citizen of Hancock County Mississippi who may be served with process personally at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520 or wherever he may be found.

7) Defendant Investigator Steve Saucier, formerly of the Hancock County Mississippi Sheriff's Department in his individual and official capacity is a resident of Hancock County Mississippi and can be served with process at his residence located at 1303 Old Spanish Trail, Bay St. Louis, MS 39520 or wherever he may be found.

8) Defendant Chief Deputy Don Bass of the Hancock County Mississippi Sheriff's Department, in his official capacity, is an adult resident citizen of Hancock County Mississippi who may be served with process personally at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520.

9) Defendant Corrections Officer Ronald Thompson in his individual and official capacity is an adult resident citizen of Hancock County Mississippi who may be served with process personally at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520 or wherever he may be found.

10) Defendant Warden Brandon Zeringue of the Hancock County Adult Detention Center, Hancock County Mississippi Sheriff's Department, in his official capacity, is an adult resident citizen of Hancock County Mississippi who may be served with process personally at the Hancock County Sheriff's Department at the Hancock County Public Safety Complex at 8450 US 90, Bay St. Louis, Mississippi 39520.

11) Defendant Dr. John Montgomery in his individual and official capacity is a consulting physician with the Hancock County Mississippi Sheriff's Department and he can be served with

process at 2809 Denny Avenue, Pascagoula, Mississippi, 39581 or wherever he may be found.

12) Defendant Wayne E. Grayson, MD in his individual and official capacity is a consulting physician with the Hancock County Mississippi Sheriff's Department and he can be served with process at The Poplarville Clinic, 1407 South Main Street, Poplarville, Mississippi 39470 or wherever he may be found.

13) Defendant Health Assurance, LLC is a Limited Liability Corporation registered in the State of Mississippi that can be served with process through its registered agent, Jackie Lewis, located at 6501 Dogwood View Parkway, Suite 3, Jackson, MS 39213. They are believed to provide healthcare to inmates at the Hancock County Adult Detention Center.

14) Defendant Bay St. Louis Mississippi is a political subdivision of the State of Mississippi and may be served with process by service upon Katherine Smith, City Clerk located at 688 Highway 90, Bay St. Louis, Mississippi 39520.

15) Defendant Bay St. Louis Mississippi Police Department is a political entity, agency, and/or political subdivision of Bay St. Louis Mississippi which may be served with process upon Chief Darren Freeman, or his designee or successor, at the Bay St. Louis Police Department at 698 US 90, Bay St. Louis, Mississippi 39520.

16) Defendant Chief Darren Freeman, Chief of the Bay St. Louis Mississippi Police Department, in his individual and official capacity, is an adult resident citizen of Mississippi who may be served with process personally at the Bay St. Louis Police Department at 698 US 90, Bay St. Louis, Mississippi 39520.

17) Defendant Officer Brad Epperson, formerly of the Bay St. Louis Mississippi Police Department in his individual and official capacity, is an adult resident citizen of Mississippi who may be served with process personally at the D'Iberville Police Department at 10274 3rd Avenue,

D'Iberville, Mississippi 39540 or wherever he may be found.

18) Defendants John Does 1 – 10, are entities or individuals affiliated with Defendants and/or who have acted in concert with Defendants and whose identities are currently unknown and individuals employed by these entities. All allegations and claims asserted herein against Defendants are incorporated herein by reference against John Does 1-10. Said John Does, when their identities are known, will be identified by name and joined in this action, if necessary, pursuant to the Federal Rules of Civil Procedure.

## SUBJECT MATTER AND PERSONAL JURISDICTION

19) The Plaintiff herein invokes federal question jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 to obtain a judgment for the costs of suit, including reasonable attorneys' fees, and damages suffered and sustained by the Plaintiff, and caused by the blatant violation of the rights, privileges and immunities of the Plaintiff as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and by the applicable federal statutes, more particularly, 42 U.S.C. §1983 which provides that state and local officials can be sued for the deprivation of any rights, privileges or immunities secured by the constitution and federal laws and 42 U.S.C. §1985(3) which provides that individuals can also be held responsible for the deprivation of rights.

20) The Plaintiff's rights to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, were violated. The Plaintiff's right to equal protection under the law, as guaranteed by the Fourteenth Amendment to the United States Constitution, was denied. The Plaintiff was discriminated against based on national origin, race, and religion in violation of Title VI of the Civil Rights Act of 1964 and the Office of Justice Programs, 42 U.S.C. § 2000d, et seq. and 42 U.S.C. § 3789d(c), and the United States

Constitution.  The Plaintiff was discriminated against on the basis of disability in violation of

The Americans with Disabilities Act (ADA) and Section 504 at 42 U.S. C. § 12131, et seq. and

29 U.S.C. § 794.  The Plaintiff was illegally detained and given no bond by a Justice Court in

violation of the laws of the State of Mississippi.  The Plaintiff was denied appropriate and

necessary medical care while detained.  The Plaintiff was subjected to perjurious testimony by

law enforcement officers and was intentionally defamed and slandered, and when such

slanderous words were published, was subjected to libel.  The Plaintiff was interrogated by law

enforcement after asking for an attorney in violation of Fifth Amendment to the

U.S. Constitution and the United States Supreme Court holding in *Miranda v. Arizona*, 384 U.S.

436 (1966).  All Defendants herein acted under color of law, using their positions in law

enforcement to falsely arrest and detain the Plaintiff, to deny him bond, to slander and defame

the Plaintiff, to commit perjury and libel against the Plaintiff, to deny the Plaintiff his

Constitutional and other rights as guaranteed as set out above, to deny the Plaintiff access to

necessary medical care, to discriminate against the Plaintiff on the basis of national origin, race,

religion, and disability, and to otherwise violate the Plaintiff's rights.

## **VENUE**

21)  Venue in this cause is proper in this Court pursuant to 28 U.S.C. §1391, because this

suit respects conduct, acts and/or omissions of the Defendants which occurred completely within

the jurisdiction of the United States District Court for the Southern District of Mississippi. These

incidents occurred and/or originated in Bay St. Louis and Hancock County, Mississippi.

## BACKGROUND

22) This is a civil action brought by the Plaintiff, pursuant to constitutional, statutory and common law. It is brought under Federal law for the harm unjustly, intentionally, wrongfully and continually done to Plaintiff by the Defendants. The Defendants are certain entities, their employees and agents, with names both known and unknown, who, at all pertinent times, acted individually and in concert to harm the Plaintiff and deprive the Plaintiff of his freedom, safety, security, health and livelihood. At all pertinent times, the Defendants have purposefully, willfully, knowingly and intentionally engaged in cruel, threatening, inhuman, malicious, slanderous, libelous, discriminatory, and illegal activities, and continue to do so, knowing full well that Plaintiff has been and continues to be injured as a result of Defendants' actions.

## FACTS

23) Plaintiff, Mr. Alidoust, was illegally detained and given no bond by a Justice Court which is a violation of the laws of the State of Mississippi;

24) Mr. Alidoust was not provided with appropriate and necessary medical care while detained;

25) The officers involved falsely reported the charges and allegations against the Plaintiff as well as falsely reported statements allegedly made by the Plaintiff which resulted in a longer detention as well as permanently and irreversibly defaming the Plaintiff's character and reputation.

26) Mr. Alidoust was discriminated against and treated poorly by local authorities because he is Iranian, a Muslim and suffered from a mental illness. Our constitution and our laws are in place to prohibit discrimination on the basis of race, color, national origin, sex, and religion by State and local law enforcement agencies. (42 U.S.C. § 2000d, et seq. and 42 U.S.C. § 3789d(c)).

These laws prohibit both individual instances and patterns or practices of discriminatory misconduct. This misconduct is also covered by Title VI of the Civil Rights Act of 1964 and the Office of Justice Programs. The Plaintiff was clearly not afforded the protection of the Equal Protection Clause of the United States Constitution. There may also be violations of the Omnibus Crime Control and Safe Streets Act of 1968.

27) Mr. Safa Alidoust, was held for 68 days (August 30 – November 5, 2015) without a reasonable bond and never offered adequate medical care. He was never offered or given a translator. He was questioned repeatedly after asking for an attorney. In order to eventually be released from jail, he had to agree to inpatient mental health treatment in Mississippi and which is wholly inadequate in the State of Mississippi.

28) The Americans with Disabilities Act (ADA) and Section 504 prohibit discrimination against individuals with disabilities on the basis of disability. (42 U.S.C. § 12131, et seq. and 29 U.S.C. § 794). These laws protect all people with disabilities in the United States. An individual is considered to have a "disability" if he or she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. The Plaintiff very clearly suffered from an illness from the very moment law enforcement came into contact with Mr. Alidoust as is well-documented in police reports and medical records.

29) False Imprisonment: Mr. Alidoust was arrested on August 30, 2015. When officers first came into contact with Mr. Alidoust, he was clearly suffering from an illness. No procedures or policies were followed as they pertain to contact with a person possibly suffering from a mental illness. The ambulance records and hospital records clearly show that Mr. Alidoust was suffering from an Acute Psychosis. Once transported to a hospital emergency room, the hospital called one

psychiatric facility to have Mr. Alidoust admitted but when a bed was not available they released him to the Hancock County Sheriff's Office. The release forms signed by and given to Investigator Saucier stated Mr. Alidoust was medically cleared for Psychiatric referral. No attempt was made by anyone, other than his attorney to get Mr. Alidoust any medical treatment from that point on.

30) Mr. Alidoust had been given a bond on August 31, 2015 and then the county "changed their mind" prior to Mr. Alidoust being able to make a phone call or figure out how to secure a bond. Mr. Alidoust was clearly frightened, confused and disoriented. A Public Defender was asked to meet with him on September 1 2015 because a bond hearing was set on that date. The County thought he had an attorney but he did not. On that date, Justice Court Judge Hoda denied Mr. Alidoust a bond which is a violation of the laws of the State of Mississippi. A Justice Court Judge does not have the authority to deny a bond. The Judge was so informed by law enforcement.

31) When the Public Defender first met Mr. Alidoust it was clear that he was ill. The attorney immediately began contacting jail personnel, the warden, the sheriff and the Assistant District Attorney to make them aware of the fact that Mr. Alidoust desperately needed medical treatment and should not be incarcerated. He clearly did not have the state of mind required to commit a crime. His attorney was informed that the jail was providing the minimal amount of medical care required by law which consisted of a jail nurse talking to Mr. Alidoust.

32) Mr. Alidoust was originally charged with two counts of simple assault on law enforcement and one count of false reporting of a bomb. The simple assaults were changed to aggravated assaults a few days after his arrest and then a charge of resisting arrest was added. All of the charges were ultimately dismissed.

33) Investigators met with Mr. Alidoust at least three times, one of which was the same day he has an attorney appointed, but after the attorney was appointed. It is clear that Mr. Alidoust repeatedly asks for an attorney and although he speaks English as a second language, he clearly did not fully understand what was being said by investigators. When he is told he has the right to remain silent, he asks if he chooses to exercise that right, how long he must remain silent. He is clearly unfamiliar with American criminal law and procedure and should have been provided with a certified or registered court interpreter, or at the very least, an attorney.

34) In Mr. Alidoust's first meeting with his attorney he described being choked, how being choked frightened him, how he remembered not being able to breathe and repeated, very vivid nightmares that woke him up at night frightened involving a big bald white man choking him. He would wake up gasping for air. This was a direct result of Deputy Compton choking Mr. Alidoust on the side on Interstate 10 on the night in question, which is a Felonious Assault by Deputies Compton and Contranchis.

35) Mr. Alidoust was not given a bond nor was he provided with adequate medical treatment. Fortunately, he had the means to retain counsel and file a Petition for Writ of Habeas Corpus against Ricky Adam in his official capacity as Sheriff of Hancock County Mississippi. This is the appropriate procedure for petitioning the court for this type of relief. The earliest a hearing could be scheduled was September 15, 2015. When the Petition was filed in Circuit Court on September 8, 2015, Justice Court Judge Hoda gave Mr. Alidoust a $500,000.00 cash only bond. The Court initiated the bond being changed within an hour of the filing of the Circuit Court Petition, so clearly they were already aware that what they had done was illegal.

36) All interested parties were informed that Mr. Alidoust would still be proceeding with the Petition for Writ of Habeas Corpus based on the fact that a $500,000.00 cash bond was the

equivalent of no bond and not a reasonable bond under the circumstances. This large bond amount was based solely on the facts that the Plaintiff is Iranian, Muslim and suffering from a mental illness. There are no comparable cases where a defendant with similar charges had such a large bond.

37) Under Mississippi rules for a Writ of Habeas Corpus, process must be served on Sheriff Ricky Adam and it must be at least 3 business days prior to the hearing. The hearing was on a Tuesday, and the date was set on the previous Wednesday, September 9, 2015. Service was attempted on the Sheriff on the Wednesday evening prior to the Tuesday September 15, 2015 hearing date. First, a process server who is former law enforcement and knows Sheriff Adam, went to Sheriff Adam's home. On his first attempt he was told the Sheriff was not home. He went back to serve an adult family member and the Sheriff's wife refused to open the door and had a gun on her person visible through the window.

38) The following morning a different process server attempted service at the Sheriff's Office by service upon the Sheriff's Secretary. A call was made first to confirm his secretary was in the office. When the process server went to the front desk clerk at the Sheriff's department, they refused to allow him access to Sheriff Adam or his secretary. The process server was then instructed to give the documents to the front desk clerk and note her name on the summons return. The front desk clerk refused to accept the documents and told the process server that the Sheriff's Department was directed by Sheriff Adam "not to accept anything from Cindy Burney (Plaintiff's Attorney)". Pursuant to Miss. Code Ann. § 97-9-75 "[a]ny person who knowingly and wilfully opposes or resists any officer or other authorized person in serving or attempting to serve or execute any legal writ or process, shall be guilty of a misdemeanor." Sheriff Adam

committed a crime in his efforts to evade service of process and such is surely not within the scope of his duties as Sheriff of Hancock County.

39)  At the hearing on September 15, 2015, the State offered the testimony of Investigator Steve Saucier. Judge Dodson based her ruling at that hearing on the perjured testimony of Investigator Saucier that Mr. Alidoust had admitted to assaulting officers and the possibility that he suffered from a mental illness. Steve Saucier individually and in his official capacity as well as Sheriff Ricky Adam, the Hancock County Sheriff's Department and Hancock County

40)  On October 5, 2015, the Psychological Evaluation that was requested on September 15, 2015 was finally received and it concluded that Mr. Alidoust had no mens rea at the time of the alleged offenses, yet he was still not released from the Hancock County Public Safety Complex, a/k/a, the Hancock County jail, hereinafter referred to as the HCPSC.

41)  On October 27, 2015 a second hearing was scheduled. The Judge reset the hearing until October 30, 2015 after reading the Psychological Evaluation, and being informed that counsel had received the recorded interviews of Mr. Alidoust by law enforcement just recently. These recordings contradicted Investigator Steve Saucier's testimony of September 15, 2015. By this time, Investigator Steve Saucier had been fired from the Hancock County Sheriff's Department.

42)  A third hearing on the Petition for Writ of Habeas Corpus was held on October 30, 2015. Investigator Steve Saucier was not available so Investigator Brandon Normand and Officer Brad Epperson testified for the State. At this time Mr. Alidoust's bond was reduced to a $200,000.00 security bond. This is still not consistent with the bond set for any other defendants charged with the same or similar offenses.

43)  Mr. Alidoust paid the bondsman and secured the bond on October 30 however he was not released from the jail until November 5, 2015.

44) Officer Brad Epperson admits on the stand that Alidoust never said "Muslim" nor had he threatened to kill non-Muslims. Officer Brad Epperson had previously reported that Alidoust threatened to kill all non-Muslims. Officer Brad Epperson, the Bay St. Louis Police Chief, the Bay St. Louis Police Department and the City of Bay St. Louis should be held liable to the Plaintiff for this perjury, defamation, slander and libel. Such acts are not within the scope of their duties as law enforcement officers.

45) Deputy Don Bass and Sheriff Ricky Adam had reported to numerous media outlets that Alidoust made "terroristic threats", and that Officer Brad Epperson reported that Alidoust threatened to kill all non-Muslims. Neither of these things ever happened and the gravity of a young professional Iranian Muslim being labeled a terrorist on television, in print, on the internet, across the country and around the globe is unquantifiable and inexcusable. Deputy Don Bass in his official capacity, Sheriff Ricky Adam individually and in his official capacity, Hancock County Sheriff's Department and Hancock County should be held liable to the Plaintiff for this defamation, slander and liable.

46) Discrimination, Civil Rights and Equal Protection Violations: Mr. Alidoust was denied appropriate medical care and his basic civil liberties from the minute law enforcement came into contact with him. Mr. Alidoust, after leaving the emergency room on August 30, 2015, "medically cleared for psychiatric commitment", was taken to Hancock County Public Safety Complex ("jail" or "HCPSC"). He was incarcerated for 68 days without seeing a medical doctor or therapist. The jail provided care by way of nurses and "Larry" the counselor.

47) When counsel met Mr. Alidoust on September 1, 2015, it was obvious to counsel that he needed medical and psychiatric treatment. The tapes of his interviews with law enforcement clearly establish his need for treatment and the extent of his disability, and despite being on

suicide watch until September 8, 2015, it was September 18, 2015 before he was seen by the jail's psychiatrist. Once Dr. Montgomery, the psychiatrist, did visit Mr. Alidoust, he simply prescribed medication to Mr. Alidoust based on a forensic psychological evaluation that his counsel had arranged and which Mr. Alidoust paid for. Counsel was able to get the psychological evaluation only because Mr. Alidoust could pay for the evaluation and the filing of the Petition for Writ of Habeas Corpus. By way of this civil proceeding, his attorney filed a Motion for Psychiatric Evaluation and was able to arrange for a psychologist to meet with Mr. Alidoust on September 15, 2015, after the initial hearing on the Petition. Dr. Montgomery met with Mr. Alidoust long enough to tell him he conferred with Dr. Smallwood, the Psychologist, and would be prescribing medication. The medication he first prescribed, Zyprexa, caused the Plaintiff significant memory loss which continues to this day.

48)  When Mr. Alidoust was finally released from HCPSC on November 5, 2015, he was released into the care and custody of his attorney and ordered not to leave Mississippi until he sought inpatient psychiatric treatment. The entire time he was incarcerated, Mr. Alidoust was not able to contact his family by telephone nor did he have any visitors except on the date of the third hearing.

49)  Due to his arrest, pending criminal charges, and the nature of the false and perjurious allegations against him made by law enforcement, it was extremely difficult to get any hospital to accept Mr. Alidoust for inpatient treatment, although that was the only condition under which he would be released from his illegal incarceration. The Plaintiff was unable to find any mental health treatment available anywhere in the State of Mississippi that could provide services in his native language of Farsi, that could provide a translator, or any type of therapist who even remotely understood Mr. Alidoust's cultural and religious needs and beliefs. From October 30

through November 8, 2015 the Plaintiff and his attorney tried diligently to find any inpatient

mental health facility in Mississippi to accept Mr. Alidoust as a patient.

50) On November 8, 2015, Mr. Alidoust and is attorney walked into the emergency room at

Memorial Hospital at Gulfport and reported to the staff that Mr. Alidoust was engaging in and

having thoughts of self-harming behavior. This was a last resort and the only way to get him

admitted into an inpatient facility, which was a condition of his bond. The hospital admitted the

Plaintiff and transferred him to Memorial Behavioral Health the next day. He was discharged on

November 16, 2015, at which time the Plaintiff and his attorney were informed that when Mr.

Alidoust was admitted, and the entire time he was at the facility, he had a TSH of zero and

needed to have his Thyroid checked. This is something that could have and should have been

checked prior to this, if only he were given any medical care at all when he was found

disoriented on the side of Interstate 10 on August 30, 2015.

51) Due to the false, defamatory, libelous, slanderous, and perjurious allegations against the

Plaintiff made by law enforcement, the Plaintiff is now referenced on the internet as a potential

terrorist. Any of these news stories that were written within a week of the original arrest of

August 30, 2015 are as a result of law enforcement's verbal reporting to the news agencies. Upon

information and belief the statements, other than those that are quoted as coming from Chief

Deputy Don Bass, came from Officer Steve Saucier and/or Officer Brad Epperson. There were

no written police reports or "public records" at this point in time.

52) There was no written police report by any officer on Friday September 4, 2015 and, in

fact, no report was available to anyone until Plaintiff's counsel requested a report in civil

proceedings on September 15, 2015. Additionally, Plaintiff's counsel provided the police

narratives, hospital records, recorded interviews of her client, body camera footage, and hospital

video footage to the district attorney's office herself on or about October 27, 2015 by way of discovery in the civil proceeding in her attempt to have a reasonable bond set for the Plaintiff.

53)  The news articles based on falsehoods perpetuated by the Defendants continue to harm the Plaintiff and to affect his ability to both gain employment and to return to the United States. Despite what these articles allege, no one but the Hancock County Sheriff's Department investigated or filed charges against Mr. Alidoust. Mr. Alidoust is not a terrorist, nor did he ever make terroristic threats.

54)  The body camera videos fully support the Plaintiff's allegations that he was wrongfully accused, charged and imprisoned, and additionally they show that at no time was he violent or aggressive. Although Mr. Alidoust was charged with resisting arrest, records show he was arrested just prior to leaving the hospital. The hospital security video and hospital records indicate that at that time Mr. Alidoust could not have resisted. Mr. Alidoust had been given Haldol, Ativan, and Benadryl. Hospital staff had to assist Mr. Alidoust with getting dressed and the Hospital's security video shows law enforcement helping him steady his balance as they led him out of the hospital.

55)  In the aforementioned videos Mr. Alidoust was placed in hospital scrubs by hospital staff. Mr. Alidoust left the hospital in the custody of the Hancock County Sheriff's department wearing the hospital scrubs. When Mr. Alidoust's personal property was released to his attorney, there were no clothes in his bag, only a necklace. The jail staff informed the attorney that Mr. Alidoust arrived at the jail completely nude.

56)  Mr. Alidoust has lost his health, his career and was evicted from his apartment due to the news reports that related completely false information about him. The articles and news stories were published across the United States and all over the Internet. As recently as March 2016, in

Iran, the Plaintiff has been denied employment because of this arrest and the resulting reporting of it.

57) Despite continued requests and demands, the Plaintiff was routinely, systematically, intentionally and/or negligently deprived of appropriate medical treatment. The Plaintiff was routinely, systematically, intentionally and/or negligently deprived of appropriate medication. The Plaintiff was routinely, systematically, intentionally and/or negligently deprived of any mental health treatment. The Plaintiff was routinely, systematically, intentionally and/or negligently deprived of his religious freedom. The Plaintiff was routinely, systematically, intentionally and/or negligently deprived of appropriate nutrition and hygiene. The Plaintiff was routinely, systematically, intentionally and/or negligently deprived of any visitation or familial telephone contact.

58) Plaintiff respectfully asks this court to provide the maximum relief allowed under the law. Based upon the foregoing, the Plaintiff avers that the Defendants, both named and unnamed, did conspire to and did violate the rights, privileges and immunities of the Plaintiff, as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America and by the applicable Federal Statutes, more particularly, 42 United States Code sections 1983 and 1985(3), and in so doing intentionally and/or negligently caused losses, damages, pain and suffering to Plaintiff.

## COUNT I
## ACTION FOR DEPRAVATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

59) Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in Paragraphs 1-58 of this Complaint.

60) At all times material hereto, the Defendants, both named and unnamed, were vested with authority and the non-delegable duty of adhering to, complying with, and

enforcing the laws of the United States of America and the State of Mississippi. Consequently, while acting under color of state law, the Defendants commenced to engage in a course of conduct and to implement a policy, custom, usage, plan, practice, and/or design wherein the rights, privileges, and immunities of the Plaintiff, Safa Alidoust, were violated. Specifically, the Defendants, jointly and severally, engaged in a course of conduct that resulted in the violation of the Plaintiff's right to the equal protection of the laws of the United States of America pursuant to the Eighth and Fourteenth Amendments to the Constitution of the United States of America and the corresponding provisions of the Constitution of the State of Mississippi, the right to procedural and substantive due process of the law pursuant to the Fifth and Fourteenth Amendments to the Constitution of the United States of America, and the right to be free from cruel and unusual punishment as set forth in the Eighth Amendment to the Constitution of the United States of America. The violation complained of in this Complaint for depravation of identifiable civil rights of the Plaintiff, include, but are not limited to, the unnecessary, wanton and/or negligent, depravation of life sustaining medication and medical treatment throughout the course of the Plaintiff's illegal incarceration, inadequate treatment and supervision of an inmate experiencing a known, severe psychotic episode, and other acts and/or omissions by the Defendants, both named and unnamed, to inflict pain, humiliation, and/or injury upon the Plaintiff, with deliberate indifference to the immediate, grave, and serious medical needs of the Plaintiff, all of which caused or contributed to permanent physical, mental and emotional injuries and disabilities. Additionally, the named defendants, both named and unnamed, failed to adequately train staff and medical personnel or hire properly trained staff and personnel, or receive proper training as to the supervision of and medical care for inmates.

61) At all times material hereto, the Defendants HANCOCK COUNTY, MISSISSIPPI, by and through its Board of Supervisors, HANCOCK COUNTY SHERIFF'S DEPARTMENT, SHERIFF RICKY ADAM, officially and in his individual capacity, HANCOCK COUNTY ADULT DETENTION CENTER WARDEN BRANDON ZERINGUE, officially and in his individual capacity, DR. JOHN MOTNGOMERY, DR. W. GRAYSON and HEALTH ASSURANCE, LLC, and OTHER UNKNOWN JOHN DOES 1 - 10, also in their official and individual capacities, and their agents, representatives, and employees acted pursuant to policies, regulations, and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy of or were pursuant to a governmental custom, usage or practice of the Defendants HANCOCK COUNTY, MISSISSIPPI, by and through its Board of Supervisors, HANCOCK COUNTY SHERIFF'S DEPARTMENT, SHERIFF RICKY ADAM, officially and in his individual capacity, HANCOCK COUNTY ADULT DETENTION CENTER WARDEN BRANDON ZERINGUE, officially and in his individual capacity, DR. JOHN MOTNGOMERY, DR. W. GRAYSON, HEALTH ASSURANCE, LLC, and OTHER **UNKNOWN** JOHN DOES 1 - 10, also in their official and individual capacities, and their agents, representatives, and employees.

62) As a direct and proximate consequence of the Defendants' aforementioned conduct, wherein such Defendants deprived the Plaintiff of certain rights guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi, the Plaintiff, suffered immediate and irreparable injury to his person resulting in permanent injury, lost wages, traumatic emotional injuries, permanent physical damage, loss of reputation, and other damages to be proven at trial. The acts and/or omissions of the Defendants, both named and unnamed, caused the Plaintiff to suffer extreme fear, pain, suffering, humiliation,

degradation, and severe emotional and mental anguish and distress. Thus, the Defendants, both named and unnamed are jointly and severally liable for the damages of the Plaintiff.

**COUNT II.**
**ACTION FOR CONSPIRACY TO INTERFERE WITH**
**CIVIL RIGHTS (42 U.S.C. § 1985)**

63)  The Plaintiff hereby incorporates by reference and re-alleges the information set forth in paragraphs 1-62, supra.

64)  At all times material hereto, the Defendants, HANCOCK COUNTY MISSISSIPPI, HANCOCK COUNTY MISSISSIPPI SHERIFF'S DEPARTMENT, RICKY ADAM INDIVIDUALLY AND IN HIS CAPACITY AS SHERIFF OF HANCOCK COUNTY MISSISSIPPI, DEPUTY CARL CONTRANCHIS INDIVIDUALLY AND IN HIS CAPACITY AS DEPUTY SHERIFF OF HANCOCK COUNTY MISSISSIPPI, DEPUTY JOHN COMPTON INDIVIDUALLY AND IN HIS CAPACITY AS DEPUTY SHERIFF OF HANCOCK COUNTY MISSISSIPPI, INVESTIGATOR STEVE SAUCIER INDIVIDUALLY AND IN HIS CAPACITY AS INVESTIGATOR AT HANCOCK COUNTY MISSISSIPPI SHERIFF'S DEPARTMENT, CHIEF DEPUTY DON BASS INDIVIDUALLY AND IN HIS CAPACITY AS CHIEF DEPUTY SHERIFF OF HANCOCK COUNTY MISSISSIPPI, CORRECTIONS OFFICER RONALD THOMPSON INDIVIDUALLY AND IN HIS CAPACITY AS CORRECTIONS OFFICER AT HANCOCK COUNTY ADULT DETENTION CENTER, WARDEN BRANDON ZERINGUE, INDIVIDUALLY AND IN HIS CPAPCITY AS WARDER OF HANCOCK COUNTY ADULT DETENTION CENTER, DR. JOHN MONTGOMERY, DR. WAYNE E. GRAYSON, HEALTH ASSURANCE, LLC, CITY OF BAY ST. LOUIS MISSISSIPPI, BAY ST. LOUIS MISSISSIPPI POLICE DEPARTMENT, OFFICER BRAD EPPERSON INDIVIDUALLY AND IN HIS CAPACITY AS AN OFFICER OF BAY ST. LOUIS

POLICE DEPARTMENT, CHIEF DARREN FREEMAN SUBSTITUTED FOR MIKE DENARDO AS POLICE CHIEF OF BAY ST. LOUIS MISSISSIPPI POLICE DEPARTMENT, and DEFENDANTS JOHN DOES 1-10, and other as yet unidentified defendants, did conspire to deprive the Plaintiff, of the rights, privileges, and immunities guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi. Specifically, the Defendants, conspired as outlined in preceding paragraphs of this Complaint, to engaged in a course of conduct that resulted in the violation of the Plaintiff's right to the equal protection of the laws of the United States of America pursuant to the Fourteenth Amendment to the Constitution of the United States of America and the corresponding provisions of the Constitution of the State of Mississippi, the right to procedural and substantive due process of the law pursuant to the Fifth and Fourteenth Amendments to the Constitution of the United States of America, and the right to be free from cruel and unusual punishment, as set forth in the Eighth Amendment to the Constitution of the United States of America.

65)      As a direct and proximate consequence of the Defendants' aforementioned conduct, wherein such Defendants conspired to deprived the Plaintiff of certain rights guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi, the Plaintiff suffered immediate and irreparable injury. The acts and/or omissions of the Defendants, both named and unnamed, caused the Plaintiff to suffer extreme pain, suffering, humiliation, degradation, and severe emotional and mental anguish and distress. Thus, the Defendants, both named and unnamed are jointly and severally liable for conspiring to intentionally violate the civil rights of the Plaintiff. The Defendants have proximately caused Plaintiff's economic and other damages.

## COUNT III
## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66) Plaintiff hereby incorporates and adopt by reference each and every allegation set forth in Paragraphs 1-65 of this Complaint.

67) The Defendants did tortuously, maliciously, and without a legitimate or arguable reason in fact or law intentionally and/or negligently inflict emotional distress on the Plaintiff as set out above. The Defendants' actions and conduct were malicious, intentional, willful, wanton, grossly careless, indifferent and/or reckless, and without regard for the rights of the Plaintiff. Further, the Defendants' actions were such that they evoked outrage or revulsion.

68) Defendants' acts and conduct as alleged above were willful, wanton, malicious, grossly negligent, and done with reckless disregard for the rights of Plaintiff, thereby arising to the level of an independent tort and entitling Plaintiff to an award of punitive damages.

## COUNT IV – NEGLIGENCE, GROSS NEGLIGENCE,
## RECKLESS DISREGARD FOR RIGHTS OF PLAINTIFF

69) Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in Paragraphs 1-98 of this Complaint.

70) Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiff's rights.

71) Defendants' negligent, grossly negligent, and/or reckless actions proximately caused Plaintiff's economic and other damages.

## COUNT V
## ECONOMIC DAMAGES

72) Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in Paragraphs 1 - 71 of this Complaint.

73) Defendants have proximately caused Plaintiff's economic and emotional damages.

74) The actions of Defendants were undertaken with willful and deliberate disregard of the rights of the Plaintiff. The actions of Defendants warrant the imposition of punitive damages under Mississippi law and the United States Constitution.

## COUNT VI
## AIDING AND ABETTING / CIVIL CONSPIRACY

75) Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in Paragraphs 1 - 74 of this Complaint.

76) Defendants aided and abetted one another in their wrongful and fraudulent actions. Defendants had knowledge of one another's tortious, wrongful activities that harmed Plaintiff and yet gave substantial assistance to such conduct.

77) Moreover, Defendants had knowledge of each other Defendant's tortious, wrongful conduct and acted in concert with each Defendant.

78) Defendants knew that their actions were aiding and abetting other Defendants in their efforts to harm the Plaintiff and to violate his legal, civil, and Constitutional rights.

79) Defendants conduct and actions in this regard substantially assisted and encouraged each other Defendant.

80) Defendants further substantially assisted, acted in concert pursuant to a common plan, and acted as a joint and concurrent tortfeasor against the Plaintiff.

81) The above actions of all Defendants, and each of them, were in furtherance of a civil conspiracy to harm, to illegally detain, to harm, to discriminate against, to slander, defame, and libel the Plaintiff, to violate the legal, civil, and Constitutional rights of the Plaintiff, without legitimate or arguable reason in fact or law. Such actions violate not only the constitutional rights but were so grossly negligent and committed in reckless disregard of the rights of Plaintiff that they violate Mississippi statutory law and constitute negligence per se.

82) The object of the conspiracy between Defendants was to harm the Plaintiff and was in violation of both the criminal statutes of the State of Mississippi and the positive duties placed on Defendants by Mississippi substantive law. Although the Defendants were acting under color of law, their actions were illegal and therefore not within the scope of their employment.

## COUNT VII
## SLANDER, DEFAMATION, AND LIBEL

83) Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in Paragraphs 1 - 82 of this Complaint.

84) The Defendants have, both jointly and individually, intentionally made allegations that they know to be false for the sole purpose of harming the reputation of the Plaintiff. Said allegations were unprivileged, said false and untrue statements were made by Defendants, both in their individual capacity and as agents of the political subdivisions of the State of Mississippi, negligently, willfully, and maliciously, and said false and untrue statements have caused the Plaintiff harm. The actions and words of Defendants, both in their individual capacity and as agents of political subdivisions of the State of Mississippi, were communicated to others and were defamatory in nature, slanderous, and when ultimately reduced to writing and communicated to others, libelous.

85) The false and untrue statements and words of the Defendants, both spoken and written, were slanderous per se, and therefore relieve the Plaintiff of the need to prove special damages. Said allegations were made wantonly and willfully and would evoke outrage or revulsion. The allegations made by Defendants mpute the guilt or commission of some criminal offense involving moral turpitude and infamous punishment, as they have alleged felony conduct. Further, said allegations did cause the Plaintiff to be terminated from his job and

deported to Iran and such allegations are grounds for termination. Mississippi courts have repeatedly held that "[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable per se." *Ferguson v. Watkins*, 448 So.2d 275 (Miss.1984). The Defendants have subjected the Plaintiff to public ridicule as a result of their false and untrue defamatory, slanderous, and libelous statements. The actions of Defendants, both in their individual capacity and as agents of political subdivision of the State of Mississippi, were wanton and willful and evoked outrage and/or revulsion. Further, the egregious acts of Defendants, both in their individual capacity and as agents of a political subdivision of the State of Mississippi, have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The Plaintiff has suffered actual economic damages as a result of the actions of Defendants, both in their individual capacity and as agents of a political subdivision of the State of Mississippi, as well as having physical manifestations and damages caused by the actions of Defendants. The Plaintiff is entitled to recover actual and punitive damages from Defendants, both in their individual capacity and as agents of a political subdivision of the State of Mississippi.

## REMEDIES

86) Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in Paragraphs 1 - 85 of this Complaint.

87) As a direct and proximate result of Defendant's conduct and actions, with such actions and conduct being without a legitimate or arguable reason in fact or law, Plaintiff is entitled to the following relief:

(A)     Payment for all actual damages incurred by the Plaintiff as a result of the wrongful actions of the Defendants, individually and severally, both in their individual capacities and as agents of a political subdivision of the State of Mississippi;

(B)     Prejudgment interest on the amounts owing to Plaintiff retroactive to August 29, 2015, as well as post-judgment interest. in the amount of 8% per annum;

(C)     Compensatory damages on the tort claims for mental distress, emotional harm, and other losses and damages suffered by Plaintiff as a proximate result of the wrongful actions of the Defendants. Plaintiff is entitled to consequential damages, including, but not limited to, the amounts Plaintiff expended or lost in trying to subsist without since August 29, 2015. On all claims Plaintiff is entitled to recovery for humiliation, stigmatization in the Plaintiff's communities, embarrassment, and mental distress proximately caused by Defendants' wrongful actions set out herein;

(D)     For the intentionally tortious actions of Defendants, compensatory damages as described above, punitive damages, and as further provided under Mississippi law, Plaintiff is entitled to recovery of his attorney fees and costs of litigation for such intentional acts committed by Defendants;

(E)     Punitive damages for Defendants' tortious, malicious, willful, wanton, reckless, grossly negligent, negligent and/or intentional infliction of emotional distress, which arose to the level of an independent tort, including, but not limited to, compensatory damages for all out of pocket expenses incurred by reason of loss of reputation, revulsion in the community, mental distress and/or emotional harm caused or contributed to by Defendants' wrongful actions, and recovery of attorney fees and litigation expenses incurred by Plaintiffs by reason of Defendants' wrongful actions; and

(F)     Punitive and exemplary damages for Defendants' tortious, malicious, willful, wanton, reckless, and grossly negligent conduct which arose to the level of an independent tort, including but not limited to, an award of punitive damages sufficient to punish and deter Defendants, make an example of the Defendants to discourage others from engaging in such misconduct, taking into account Defendants' financial condition, all in an amount sufficient to achieve the public purposes underlying an award of punitive damages as may be determined by the Court and/or jury; prejudgment interest on all amounts including compensatory damages awarded by the Court and/or jury; and all costs of the litigation, including but not limited to, reasonable attorney's fees incurred in prosecuting this action and any subsidiary or auxiliary actions that arise in determining the losses of the Plaintiff, in an amount to be determined by the Court following conclusion of all proceedings herein.

## PRAYER FOR RELIEF

88) The Plaintiff hereby incorporates by reference and re-alleges the information set forth in paragraphs 1-87, supra.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Safa Alidoust, prays that upon the filing of this Complaint that this Honorable Court will set this matter for a full and complete trial on the merits and upon completion of the same, enter a judgment granting the following relief:

A) Enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for the actual or compensatory damages sustained by the Plaintiff for loss of wages, loss of future wages, personal injury to the body, physical pain and suffering, infliction of emotional distress, mental anguish, degradation, humiliation, loss of enjoyment of life, medical expenses, loss of society and support, and any other injury claim that may be discovered during the course of this cause which the law holds the

Defendants liable and responsible in an amount to be determined by a jury, but not less than $2,000,000.00;

B)  Enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for punitive or exemplary damages, for the outrageous, willful, wanton and intentional conduct that resulted in gross or reckless disregard for the welfare, safety, rights, privileges, and/or immunities of the Plaintiff, in an amount to be determined by a jury, but not less than $2,000,000.00;

C)  Enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for the Plaintiffs reasonable attorney's, all costs of this action and related litigation expenses and expert fees;

D)  Enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, both in their individual capacities and as agents of a political subdivision of the State of Mississippi and for such other relief, general or specific, as the Court may deem appropriate, just, and equitable in the premises.

E)  Plaintiff respectfully requests such further general or specific relief to which he is entitled to at law or in equity.

F)  Plaintiff respectfully requests a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this the 14th day of February, 2017.

SAFA ALIDOUST, Plaintiff

By:  s/

Dianne Herman Ellis
MS Bar No. 102893
1145 Robinson Street
Ocean Springs, MS 39564
PH: 228-215-0037
Fax: 228-284-1889
Email :*Dianne@EllisLawFirmMS.com*